IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| VICTORIA A. BILLINGSLEA, )<br>)<br>   Plaintiff, )<br>)<br>   v. )<br>)<br>)<br>OSCAR CRAWLEY, Mayor of )<br>the City of Lanett, )<br>Alabama, in his official )<br>capacity, and CITY OF )<br>LANETT, ALABAMA, an Alabama )<br>municipal corporation, )<br>)<br>   Defendants. ) | CIVIL ACTION NO.<br>3:10cv822-MHT<br>(WO) |

OPINION

Plaintiff Victoria A. Billingslea brings this lawsuit against defendants City of Lanett and Oscar Crawley (in his official capacity as Mayor of Lanett), charging that she was discriminated against because of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 1981a, 2000e to 2000e-17), and the Equal Pay Act of 1963, as amended (29 U.S.C. § 206). Jurisdiction over Billingslea's claims is proper under 28 U.S.C. § 1331 (federal question) and § 1343 (civil

rights); 42 U.S.C. § 2000e-5(f)(3) (Title VII); and 29 U.S.C. § 216(b) (Equal Pay Act).

This case is now before the court on the city and mayor's motion for summary judgment.  For the reasons that follow, summary judgment will be entered in their favor.


## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether summary judgment should be granted, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

In August 2008, the Lanett Housing Authority advertised in a local newspaper a position for a property manager. Billingslea, who had been employed for a decade with the housing authority as an assistant property manager, applied for the job, along with several other female applicants. Once the deadline for the position closed, the authority decided to re-open the position and advertise it in the local newspaper again, despite the fact that each of the female applicants, including Billingslea, had applied for it on time. Gary Belyeu submitted an application in response to the re-posted advertisement.

Upon receiving the applications, the Lanett Housing Authority Director ranked them and submitted them to the the authority's Board of Commissioners, which was chaired by Rose Morgan Wood. According to the director's rankings, the top three applicants were women. However, in spite of this, Belyeu was hired for the position over

all of the female applicants. Further still, Billingslea claims that, because she was more experienced than Belyeu, she was asked to train him for the position for which she was passed over, all the while receiving less pay than he did.

In October 2009, Billingslea was promoted to the property-manager position, and Belyeu was promoted to staff accountant. Billingslea claims that, although these are similar positions and she is more qualified, Belyeu continues to enjoy a higher salary.

Billingslea filed a complaint with the Equal Opportunity Employment Commission. Following an investigation, the commission issued a right-to-sue letter.

Billingslea then sued the Lanett Housing Authority, the City of Lanett, Mayor Crawley, and Board Chair Rose Wood. By agreement of the parties, the housing authority and Wood were dismissed with prejudice. The city and the

mayor, the only remaining parties, now seek summary jugdment in their favor.

## III. DISCUSSION

The city and its mayor do not address Billingslea's claims on the merits; instead, they challenge her attempt to hold them accountable for the actions of the housing authority. Title VII and the Equal Pay Act require analysis of this issue under different standards. The court will address each in turn.

### A. Title VII

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2 (a)(1). Significantly for this case, relief under Title VII may

come from only an employer.  See, e.g., Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.") (emphasis in original).  Absent an employment relationship, a defendant cannot be liable under Title VII.  See, e.g., Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir. 1995); Walker v. Boys & Girls Club of Am., 38 F. Supp. 2d 1326, 1329 (M.D. Ala. 1999) (Albritton, J.).

Billingslea claims that, because her employer, the Lanett Housing Authority, is a subdivision of the City of Lanett and because Mayor Crawley appointed the members and chair of the authority's board, the city and its mayor should be considered her employers under Title VII.[1]

---

1. To be considered an "employer" for the purposes of Title VII, a defendant must have at least 15 employees. 42 U.S.C. § 2000e(b). Because the Lanett Housing Authority itself does not have 15 employees, the addition of Lanett as a defendant was critical to the survival of Billingslea's claims against the authority before these claims were dismissed. See Pl.'s Resp. (Doc.
(continued...)

The city and the mayor dispute this on all counts; they claim that the authority is wholly separate and distinct from the city. Indeed, by their account, "the entire governance and operation of [the authority is] done by and through that entity alone--with no involvement or control by the city, its mayor or its governing council," Defs.' Mem. (Doc. No. 47) at 7; accordingly, Billingslea's status as a housing-authority employee in no way makes her an employee of the city or its mayor.

In Lyes v. City of Riviera Beach, Fla., 166 F.3d 1332 (11th Cir. 1999), the Eleventh Circuit Court of Appeals mapped its approach to determining whether two public entities can be considered a single employer for the purposes of Title VII.[2]  The appellate court noted its

---

     1.  (...continued)
No. 49) at 4 (arguing that the authority "has more than 15 employees because of the connection of the Defendant City of Lanett, Alabama, and the Defendant Lanett Housing Authority.").

     2.  The approach in Lyes was a departure from the test applied to determine whether the consolidation of private employers as a single employer is proper under
(continued...)

duty to construe the term "employer" liberally, which at times requires "look[ing] beyond the nominal independence of an entity and ask[ing] whether two or more ostensibly separate entities should be treated as a single, integrated enterprise" for the purposes of Title VII. 166 F.3d at 1341. However, the court reasoned that, where state and local entities are concerned, this duty must be balanced with the court's equally paramount obligation to respect a State's sovereignty. As the court explained, "We should not brush aside a state's own distinctions between its governmental subdivisions, because even ostensibly formal distinctions are part of a government's ability to shape its own institutions within constitutional bounds, and we are obligated to respect a state's right to do so." Id. at 1344.

---

2. (...continued)
Title VII. See Lyes, 166 F.3d at 1342-44. While the appellate court borrowed from the test for private employers in developing its new approach, it found that the many critical differences between public entities and private employers demanded that a different test be applied to decide whether two distinct public entities may be treated as one. Id. at 1342-45.

Against this backdrop, the Eleventh Circuit held that, when a State creates a public entity and declares it separate and distinct, it should be presumed separate and distinct for the purposes of Title VII.  <u>Id</u>.  However, this presumption can be rebutted in two ways.  First, if the State merely created separate entities to evade federal anti-discrimination law, the presumption does not apply.  <u>Id</u>.  Second, even where the State has not engaged in purposeful evasion, separate governmental entities can be treated as a single employer where "other factors so plainly indicate integration that they clearly outweigh the presumption that the entities are distinct." <u>Id</u>.

A plaintiff who wishes to rebut the presumption of separateness by this second means carries a heavy burden. <u>See</u> <u>Fender v. Clinch County, Ga.</u>, 295 Fed. App'x 957, 959 (11th Cir. 2008) ("The standard is high ... and the presumption is only overcome with strong evidence."); <u>Jackson v. City of Centreville</u>, No. 7:09-CV-02115-JEO,

2012 WL 4482393, at *12 (N.D. Ala. Aug. 16, 2012) (Ott, J.) ("The Eleventh Circuit has established a high hurdle for Plaintiffs to clear to make a showing that" purportedly separate agencies "should be considered one entity for the purposes of Title VII."). To survive summary judgment, the plaintiff may not merely show that a reasonable fact-finder could conclude that the entities should be treated as one; rather, she must show that a fact-finder could conclude that the plaintiff has <u>clearly</u> overcome the presumption. See <u>Lyes</u>, 166 F.3d at 1345. This difficult standard is an expression of concern for comity: "The adverb 'clearly' ... is a thumb on the scale, and sometimes it will be decisive because federalism concerns should sometimes be decisive." <u>Id</u>.

In deciding whether the plaintiff has met her burden, a court must look to the totality of the circumstances to "determine who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim." <u>Id</u>. The court must therefore

consider factors including "centralized control of operations; authority to hire, transfer, promote, discipline or discharge; authority to establish work schedules or direct assignments; and obligation to pay the plaintiff."  Fender, 295 Fed. App'x at 959 (citing Lyes, 166 F.3d at 1345).

In this case, Alabama law creates a presumption that the Lanett Housing Authority and the City of Lanett are separate and distinct.  Section 24-1-27(a) of the 1975 Alabama Code grants municipal housing authorities "all the powers necessary or convenient to carry out and effectuate the purposes and provisions of [the housing authority legislation]."  Critically, the Lanett Housing Authority also has authority over employment decisions and "may employ a secretary, who shall be executive director, technical experts, attorneys and such other officers, agents, and employees, permanent and temporary, as it may require and shall determine their qualifications, duties, and compensation."  1975 Ala.

Code § 24-1-24. These statutory provisions raise a clear presumption of separateness. See Laurie v. Ala. Court of Criminal Appeals, 256 F.3d 1266, 1272 (finding a presumption of separateness where "the employment positions for the [Alabama Court of Criminal Appeals] are created solely for [that court], and [the court] ha[d] autonomous authority in the selection of those positions"); Lyes, 166 F.3d at 1346 (finding a presumption of separateness between the city and a community redevelopment agency where the governing statute had granted the agency "all the powers necessary or convenient to carry out and effectuate the purposes and provisions of" the legislation).

Further, the governing state statute refers in several instances to cooperation between housing authorities and municipalities. See, e.g., 1975 Ala. Code § 24-1-132 (addressing the "[p]owers of municipalities, counties, public bodies, etc., to aid housing authorities"); § 24-1-134 (addressing the circumstances

12

in which a "[c]ity or town may lend or donate money to [a] housing authority"). The statute's repeated discussions of cooperation clearly imply separation; indeed, were the two entities a single unit, there would be little need for statutory authority by which it may cooperate with itself.

Having found that the Lanett Housing Authority and the City of Lanett must be presumed separate, the court now addresses whether Billingslea can rebut this presumption. Billingslea does not allege that the authority and the city are separate merely to circumvent federal antidiscrimination law; instead, she argues that other factors counsel in favor of treating the city and its mayor as her employers for the purposes of her Title VII claim. First, she notes that § 24-1-24 of the 1975 Alabama Code gives the mayor the power to appoint the commissioners for the housing authority. Second, she points out that § 11-43-81 of the code gives the mayor the power to remove commissioners. Finally, she cites caselaw that she argues supports her position that the

housing authority is merely an administrative arm of her actual employers: the city and the mayor.  The court is not persuaded by these arguments.

Courts in the Eleventh Circuit have made clear that mere involvement between two public entities is insufficient to overcome the presumption that they are separate and distinct.  See Laurie, 256 F.3d at 1272 (finding that the Alabama Court of Criminal Appeals was a separate entity even though it "operates as part of the Unified Judicial System"); Lyes, 166 F.3d at 1346 (finding that the city and a community redevelopment agency were separate entities even though the agency's board of commissioners was composed of city council members); Jackson, No. 7:09-CV-02115-JEO, 2012 WL 4482393, at *12 (holding that the city and the water board were separate entities even though they shared a director and operated out of the same building).

Here, the City of Lanett and its mayor were only remotely connected to the decisions that the housing authority made with regard to Billingslea: the mayor

14

appointed the authority's commissioners and chair, who in turn selected Belyeu over Billingslea for the position she desired.  However, satisfaction of the Lyes test requires more direct involvement than this.  See, e.g., Mack v. Ala. Dep't of Human Res., 201 F. Supp. 2d 1196, 1202-03 (M.D. Ala. 2002) (DeMent, J.) (holding that multiple entities could be considered a single employer where the entities shared responsibilities for hiring, discharge, supervision, and regulation of employees), aff'd, 52 F. App'x 492 (11th Cir. 2002).  Billingslea has produced no evidence that the City of Lanett or its mayor meaningfully supervise or control the housing authority's employment practices in general, nor has she shown that they did so in her case.  Thus, even as it is portrayed by Billingslea, the relationship of the City of Lanett and its mayor to the housing authority is simply too attenuated to satisfy her heavy burden.

Billingslea's appeal to caselaw provides no shelter from this conclusion.  She relies principally on Lamb v. City of Sweetwater Housing Authority, Sweetwater, TX,

3 F.3d 439 (5th Cir. 1993), to support her contention that the housing authority is simply a subdivision of the City of Lanett.  Pl.'s Resp. (Doc. No. 49) at 6.  However, this case was decided in the Fifth Circuit, which did not apply the Lyes test that governs this issue in the Eleventh Circuit; therefore, this case is inapposite.  She further cites to Alabama cases to support her contention that the housing authority is merely an arm of the city: In re Opinions of the Justices, 235 Ala. 485 (1938), and Roberts v. Fredrick, 295 Ala. 281 (1976).  These cases do nothing to address the analysis required by Lyes, which goes to the actual control exterted over the employee.

   Thus, because Billingslea cannot show that an employment relationship exists between herself and Lanett and its mayor, her claim under Title VII must fail.


### B. Equal Pay Act

   As is the case under Title VII, a challenge under the Equal Pay Act must be brought against an employer. 29

U.S.C. § 206(d)(1). "Employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization." 29 U.S.C. § 203(d).  In applying this statutory definition, courts in the Eleventh Circuit must consider the "total employment situation" through evaluation of a number of factors, which include "[w]hether or not the employment takes place on the premises of the company; [h]ow much control ... the company exert[s] over the employees; [and whether] the company ha[s] the power to fire, hire, or modify the employment condition of the employees." Wirtz v. Lone Star Steel Co., 405 F.2d 668, 669 (5th Cir. 1968);[3] see also Welch v. Laney, 57 F.3d 1004, 1011 (11th Cir. 1995) (quoting Wirtz for same).

---

3. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

The total employment situation in this case reflects that the City of Lanett and its mayor are not Billingslea's employers. As described above, the city and its mayor had, at most, an indirect relationship with her. She has not produced any evidence that they exerted any control over her actual job performance or even that they had the power to hire and fire her. Thus, Billingslea's relationship with the city and its mayor does not constitute an employment relationship for the purposes of the Equal Pay Act. See, e.g., Welch, 57 F.3d at 1011 (finding no employment relationship under the Equal Pay Act where the defendant's only control over the plaintiff was setting her salary); Blalock v. Dale Cnty. Bd. of Educ., 33 F. Supp. 2d 995, 999 (M.D. Ala. 1998) (DeMent, J.) (finding an employment relationship under the Equal Pay Act where the defendant had "direct supervision of and control over" the plaintiff).

\* \* \*

For the foregoing reasons, the City of Lanett and Mayor Crawley's motion for summary judgment will be granted.  An appropriate judgment in their favor will be entered.

DONE, this the 26th day of October, 2012.

                                                <u>/s/ Myron H. Thompson</u>
                                             UNITED STATES DISTRICT JUDGE